IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PAUL ROYBAL, <br><br> Plaintiff, <br><br> vs. <br><br> BANK OF AMERICA, N.A., BAC HOMELOANS SERVICING, LP fka COUNTRYSIDE HOME LOANS SERVICING, LP, <br><br> Defendants. | CV 14–280–M–DLC <br><br> ORDER |

Before the Court is Defendants' motion to dismiss. For the reasons explained, the Court grants the motion in part and denies it in part.

## Background

Plaintiff Paul Roybal ("Roybal") brings this diversity action against Defendant Bank of America, N.A. ("BANA") alleging that BANA breached an oral promise to Roybal to modify his home loan ("the loan"), and committed various other torts while servicing the loan. Roybal paid off the loan in full in February of 2011. BANA moves to dismiss the Complaint in its entirety, asserting that Roybal's tort claims must be dismissed for violation of the statute of limitations, Roybal's breach of contract claim fails to state a claim, and that all

1

damages arising from alleged negative credit reporting are preempted.

In May of 2008, Roybal obtained a refinance loan from BANA for property located in Kalispell, Montana. In 2009, he experienced financial difficulties, had trouble making his scheduled mortgage payments, and contacted BANA seeking assistance in modifying the loan. In February 2010, a BANA representative told Roybal, over the telephone, that he had been approved for a loan modification. Roybal was told to make three trial payments and then he would be approved for the modification. Roybal made the three trial payments, but never received written confirmation of the modification.

Over the course of the ensuing year, Roybal was subjected to a series of frustrating, confusing, and conflicting communications with BANA representatives regarding the promised loan modification. Following the three trial payments, BANA did not approve the promised loan modification. Instead, BANA repeatedly asked for more documentation and information in order to process the loan modification request.

On October 7, 2010, Roybal received notice that his loan had been referred for foreclosure proceedings. More confusing and conflicting communications with BANA representatives then ensued. In February 2011, within a week of the scheduled foreclosure sale date, Roybal managed to obtain alternate financing and

paid off the loan in full.

Sometime in 2012, Roybal received a 1099-Int from BANA which indicated that all of the payments he made in 2010 under his approved temporary payment plan had been applied to his loan. Roybal then "knew that [BANA] had, in fact, utilized the trial payments he had submitted in 2010, in accordance with their agreement." (Doc. at 13.) Prior to receiving the 1099-Int, "Roybal did not definitively know if his trial payments had ever been received," and did not know that they "had been applied to pay the interest on the loan." *Id.*

Roybal filed this action in Montana's Eleventh Judicial District Court in Flathead County on November 5, 2014, asserting claims for breach of contract, breach of implied covenant, negligence, breach of the Consumer Protection Act, breach of fiduciary duty, constructive fraud, negligent misrepresentation, fraud, and punitive damages. BANA removed to this Court on December 5, 2014, on the basis of diversity jurisdiction. BANA moves to dismiss pursuant to Rule 12(b)(6).

## Legal Standard

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient

3

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* On a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

When a motion to dismiss is based on the running of the statute of limitations, the motion may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)(quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Such a motion may be granted only when "the running of the statute is apparent on the face of the complaint." *Jablon*, 614 F.2d at 682. If the applicability of equitable tolling depends on factual questions not clearly resolved in the pleadings, a motion to dismiss based on the running of the statue must be denied. *Supermail Cargo, Inc.*, 68 F.3d at 1207.

## Discussion

### I. Breach of Contract

Roybal alleges that a BANA representative told him over the telephone that he would be approved for a loan modification if he successfully made three trial payments of $1540 each. He was also told that so long as he made the trial payments his loan would not be considered in default. Roybal made the three trial payments as required, but BANA never delivered on their oral promise to modify his loan. The modified terms were never reduced to writing. On this basis, Roybal asserts a breach of contract claim. BANA contends Roybal fails to state a claim because an oral promise is enforceable only when both parties have fully performed, and the Complaint alleges that only Roybal performed. The Court agrees.

A promissory note is a written contract and may be modified in writing or by an executed oral agreement. *Morrow v. Bank of American, N.A.*, 324 P.3d 1167, 1175 (Mont. 2014); Mont. Code Ann. § 28-2-1602. "An executed oral agreement exists where the obligations of both parties have been fully performed, and nothing remains to be done by either party. Performance by one party is not sufficient." *Id.* (internal citations omitted.)

It is plain that Roybal has not stated a valid breach of contract claim.

Roybal alleges breach of an oral agreement, but the Complaint makes clear that he was the only party who performed. As such, there was no executed oral agreement. Because the Complaint does not allege a breach of a valid contract, Roybal's breach of contract claim must be dismissed.

The allegations in *Morrow* are virtually identical to the allegations here. In *Morrow*, the Montana Supreme Court affirmed summary judgment in favor of the bank on the plaintiffs' breach of contract claim. Roybal's attempt to distinguish *Morrow* is unpersuasive. *Id.* at 1176. Roybal argues that *Morrow* differs because "[w]here the Morrows sued for breach of the modified loan agreement, Roybal sues for breach of the agreement that would have resulted in the modification of his loan had Bank of America performed." (Doc. 8 at 23.) As BANA correctly notes, this is a distinction without a difference. Roybal fails to state a valid claim for breach of contract. The claim is dismissed.

### III. Negative Credit Reporting

BANA moves to dismiss all of Plaintiff's claims to the extent that they are based on negative credit reporting, because, it asserts, such claims are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(F). Roybal does not dispute that the claims, to the extent that they are based on negative credit reporting, must be dismissed. Instead, Roybal contends that the claims need not

be dismissed in their entirety because negative credit reporting is only one component of Roybal's damages with respect to certain claims. Regardless, the parties appear to agree that the claims, to the extent that they are based on negative credit reporting, are preempted by the Fair Credit Reporting Act.

The Court agrees that to the extent that the claims are based on negative credit reporting, they are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(F), and must be dismissed. *See e.g. Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 342 (2013); *Roybal v. Equifax*, 405 F.Supp.2d 1177 (E.D. Cal. 2005). Roybal specifically includes negative credit reporting as an element of damages for his Negligence claim (Count III). He also asserts continuing damages associated with his Breach of Fiduciary Duty claim (Count V) and Fraud claim (Count VIII). His Breach of Contract claim (Count I) and Breach of the Consumer Protection Act claim (Count IV) allege negative credit reporting to credit bureaus as part of the element of breach. While the Court does not dismiss any individual claim in its entirety because of preemption, dismissing the claims to the extent that they are based on negative reporting clarifies and narrows the scope of the analysis below with respect to BANA's statute of limitations argument.

## IV. Statute of Limitations

Roybal's claims for negligence, negligent misrepresentation, and breach of fiduciary duty are subject to a three-year statute of limitations. Mont. Code Ann. § 27-2-204(1); *Walstad v. Northwest Bank of Great Falls*, 783 P.2d 1325, 1328 (Mont. 1989). His claim under Montana's Unfair Trade Practices and Consumer Protection Act, § 30-14-101–144, is subject to a two-year statute of limitations. *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (2003). His claims for fraud, actual and constructive, are subject to a two year statute of limitation. § 27-2-203. The parties do not dispute these limitation periods. The only dispute about the applicable limitations period pertains to Roybal's claim for breach of the covenant of good faith and fair dealing, which will be addressed in a separate section below.

Accordingly, other than his breach of the covenant claim, Roybal's tort claims are subject to, at most, a three-year statute of limitation period. Because Roybal filed his Complaint on November 5, 2014, his claims are subject to dismissal if (1) the claims accrued before November 5, 2011, and (2) it is beyond doubt that equitable tolling is inapplicable. Mont. Code Ann. § 27-2-102, -201, -203; *Supermail Cargo, Inc.*, 68 F.3d at 1206-07.

Roybal alleges that he first contacted BANA about a loan modification in August of 2009. In February 2010, he was told on the phone that he would be

8

approved for a loan modification if he made three monthly trial payments.  The alleged tortious conduct by BANA then began, as BANA engaged Roybal in a series of confusing and conflicting communications about modifying his loan.  This allegedly tortious behavior continued, until "[a]t the last minute, within a week of the scheduled foreclosure, Roybal was able to pay off the [BANA] loan by borrowing funds from his mother." (Doc. 7 at 9.)  Roybal "paid the loan in full in February of 2011," and his course of dealings with BANA ended at that time.  *Id.* at 10.

It is clear from the face of the Complaint that all of BANA's alleged tortious behavior occurred on or before February 2011.  Roybal paid the loan in full in February 2011, and he alleges no other relationship with BANA.

Roybal attempts to escape the statute of limitations by alleging that "[i]n 2012, [BANA] sent Roybal a 1099-Int showing $18,277.29 in interest payments received in 2011." (Doc. 7 at 10.)  According to the Complaint "[t]his was the first notification to Roybal that [BANA] had sent all of the payments he had made in 2010 under his approved 'temporary payment plan' and applied them to interest on the loan." *Id.*  Roybal argues that not until he received the 1099-Int, did the facts giving rise to his claims exist.  Roybal does not contend that equitable tolling is applicable and does not allege in his Complaint, or contend in his response

brief, that the doctrine of fraudulent concealment, *see Textana, Inc. v. Klabzuba Oil &Gas*, 222 P.3d 580, 587 (Mont. 2009), should serve to toll the statute of limitations.

Montana statute provides that generally a period of limitation on a claim "begins when the claim or cause of action accrues." Mont. Code Ann. § 27-2 -102(2). "A claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." *Id.* at -102(a); *Estate of Watkins v. Hedman, Hileman & Lacosta*, 91 P.3d 1264, 1269 (Mont. 2004)("the statute of limitations begins when all elements of a claim, including damages, have occurred"). "Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation." *Id.* It is also not "necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." *E.W. v. D.C.H.*, 754 P.2d 817, 820 (Mont. 1988) *superseded by statute on other grounds*. An action is commenced when a complaint is filed. *Id.* at -102(b).

"The discovery rule provides that a limitations period does not begin until the party discovers, or in the exercise of reasonable diligence, would have

discovered, the facts constituting the claim." *Draggin Y Cattle Co., Inc. v. Addink*, 312 P.3d 451, 456 (Mont. 2013); Mont. Code Ann. § 27-2-102(3). "However, this rule only applies when the facts constituting the claim are concealed, self concealing, or when the defendant has acted to prevent the injured party from discovering the injury or cause." *Id.*

Roybal contends that his claims did not accrue until he received notice sometime in 2012 that BANA had applied his trial payments to his account. But accrual of a claim does not depend on a party's awareness of all the facts relevant to a claim; it depends only on the facts' existence or occurrence. Even according to the allegations in the Complaint, BANA had applied Roybal's trial payments to his account before he paid of the loan in 2011. Montana law expressly provides that "[l]ack of knowledge of the claim or cause of action, or of its accrual, . . . does not postpone the beginning of the period of limitation." Mont. Code Ann. § 27-2-102(2). Nor is it "necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." *E.W. v. D.C.H.*, 754 P.2d at 820.

Roybal's receipt of the 1099-Int is not an element of any of his causes of action. Roybal essentially concedes as much. In response to the motion to dismiss, Roybal seeks only to justify his "delay in understanding [BANA]'s breach

11

of its duty." (Doc. 8 at 10.) Roybal does not allege that sending a 1099-Int is actionable in itself, or a breach of any duty. Indeed, the information allegedly provided to Roybal in the 1099-Int did not even cause any further damages to Roybal, or notify Roybal of any additional damages that he had incurred as a result of BANA's actions in 2010 or 2011. By February 2011, when Roybal paid off his loan in full, BANA had acted tortiously, and caused known injuries to Roybal. Roybal does not allege that BANA performed any other tortious acts after he paid the loan off in full in February of 2011. Thus, all of Roybal's tort claims had fully accrued by February 2011, because all of the elements of all of his claims had occurred or existed as of that date.

Nor was there any mystery about the facts constituting Roybal's claims, the source of Roybal's injuries, or their existence that would suggest that the discovery doctrine is applicable to toll the statue of limitations. The discovery rule "only applies when the facts constituting the claim are concealed, self concealing, or when the defendant has acted to prevent the injured party from discovering the injury or cause." *Draggin-Y Cattle Co., Inc.*, 312 P.3d at 456. The basic facts constituting the Roybal's various causes of action are that BANA promised a loan modification, reneged on that promise, and then proceeded to provide Roybal with "a series of confusing and contradictory representations in

2010 and early 2011 regarding the status of Roybal's account, modification, and payment status, despite various attempts at clarification by Roybal." (Doc. 8 at 10.) While it may have been difficult for Roybal to understand why BANA was acting the way it did, and while it may have been unclear if BANA would ever formally grant a loan modification as it had promised to do, the facts constituting Roybal's claims were not concealed or self-concealing. Roybal was privy to all of the facts constituting his claims while they were occurring. The fact that BANA was applying Roybal's payments to his loan as he sent them in is not an element of any of his causes of action. His discovery of this fact, therefore, did not reveal any of the "facts constituting the claim." *Draggin-Y Cattle Co., Inc.*, 312 P.3d at 456.

Likewise, Roybal's injuries were not concealed or self-concealing. The Complaint alleges that Roybal experienced panic attacks and other emotional distress damages on November 24, 2010, as a result of BANA's tortious behavior. The Complaint also alleges that Roybal had to obtain alternate financing to avoid foreclosure as a result of BANA's tortious behavior. Thus, from the face of the Complaint, Roybal clearly knew the essential facts constituting his cause of action, knew that he had been injured as a result of BANA's tortious behavior, and knew the nature of those injuries. Accordingly, the discovery doctrine is inapplicable.

At most, there was some uncertainty about the extent of Roybal's damages.

13

Roybal did not know whether his trial payments had been applied to his loan, and the 1099-Int clarified that, in fact, the payments had been applied to his loan. Ironically, the upshot of Roybal's receipt of the 1099-Int is that Roybal learned at that time that his damages were not as extensive as perhaps he may have feared. Because "[f]ew are the injuries that could not someday develop additional consequences," *E.W.*, 754 P.2d at 821, Roybal's lack of clarity about the extent of his damages is insufficient to toll the statute of limitations, and does not suggest that equitable tolling is applicable. Nor is there any suggestion anywhere in the Complaint or in Roybal's response brief that BANA fraudulently concealed from Roybal his injuries. Nor could there be. The Complaint makes clear that Roybal's injuries were well-known to him throughout 2010 and early 2011.

Ultimately, this case is similar to another Montana case involving a plaintiff suing a bank for the bank's allegedly fraudulent and tortious dealings with borrowers. In *Shiplet v. First Security Bank of Livingston, Inc.*, 762 P.2d 242 (1988), the plaintiffs alleged that the bank had committed fraud by representing that it would loan them money at a particular rate, and then did not do so. The Court found that the statute of limitations had run and tolling was inapplicable because when the plaintiffs later signed loan papers which did not contain the previously promised terms, the plaintiffs "had at that point certainly discovered

facts sufficient to constitute fraud." *Shiplet*, 762 P.2d at 247. Thus, the Court held that the discovery rule was inapplicable and the existence of a confidential relationship between the parties did not affect this determination. *Id.*

Similarly, Roybal alleges that BANA represented that Roybal would be approved for a loan modification. When Roybal paid off the loan in full under the original terms of the loan, he knew that he would not be receiving the promised loan modification. At that point, Roybal had discovered facts sufficient to constitute all of his claims.

Accordingly, even when reading Roybal's Complaint with the required liberality, it is clear from the face of the Complaint that all of Roybal's tort claims, except for the breach of the implied covenant claim, were untimely filed and Roybal cannot prove that the statute of limitations was tolled. Therefore, Roybal's Counts III, IV, V, VI, VII, and VIII must be dismissed for failure to comply with the statute of limitations. *Supermail Cargo, Inc.*, 68 F.3d at 1206-07.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing

Montana law regarding the statute of limitations for breach of the implied covenant of good faith and fair dealing is not especially well-settled. In *Kitchen Krafters, Inc. v. Eastside Bank of Montana*, the Court squarely held that "[t]he allegations of breach of the implied covenant of good faith and fair dealing and the

15

duty of disclosure are both general tort claims which are subject to a three year limitation." 789 P.2d 567, 570 (Mont. 1990). In *Story v. City of Bozeman*, decided approximately one month later, the Court held broadly that "[a] breach of the covenant is a breach of the contract." 791 P.2d 767, 775 (Mont. 1990). Several months later, the Court in *State ex rel Egeland v. City Council of Cut Bank, Mont.*, held again that "[t]he statute of limitations for . . . 'breach of the covenant of good faith and fair dealing' is the three-year statute applicable to torts." 803 P.2d 609, 611 (Mont. 1990). However, the Montana Supreme Court's most recent pronouncement on this issue appears to be in *Lutey Construction-The Craftsman v. State*, 851 P.2d 1037, 1040 (Mont. 1993). In *Lutey*, the Court citing *Story*, and without reference to *Kitchen Krafters, Inc.* or *Egeland*, held that the plaintiff's claim breach of the implied covenant was "governed by the statute of limitations for . . . contract actions." *See also First Sec. Bank of Missoula v. Ranch Recovery Ltd. Liability Co.*, 976 P.2d 956, 961 (Mont. 1999). Despite the contradictory pronouncements on this issue, this Court will look to and rely on the Montana Supreme Court's most recent pronouncement of the law. Accordingly, the Court will apply the statute of limitation applicable to contract actions, which is eight years for a contract based upon a written instrument. Mont. Code Ann. §27-2-202.

Roybal's claim for breach of the implied covenant of good faith and fair dealing is still subject to dismissal if it is inextricably linked to his failed claim for breach of contract because a claim for breach of the implied covenant must be based on a valid contract. *Morrow*, 324 P.3d at 1176-77. Accordingly, the Court must examine whether Roybal's claim for breach of the implied covenant is based on something other than the unenforceable oral promise that is the subject of his failed breach of contract claim.

Implied in every contract is a covenant of good faith and fair dealing, which requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Id.* (citing § 28-1-211.) The existence of an enforceable contract is a prerequisite to a claim for tortious breach of the covenant. *Id.*; *Cate v. First Bank (N.A.) Billings*, 865 P.2d 277, 279 (Mont. 1993). "The nature and extent of an implied covenant of good faith and fair dealing is measured *in a particular contract* by the justifiable expectations of the parties." *Cate*, 865 P.2d at 279 (emphasis in original). The covenant "must attach to a party's actions within the confines of its duties under a contract." *Id.* at 280. In *Morrow*, the Montana Supreme Court affirmed summary judgment in favor of the bank when the plaintiff's claim for breach of the implied covenant was not based on the underlying, enforceable written loan agreement, "but on the breach of the

17

alleged oral contract to modify [the] loan." *Morrow*, 324 P.3d at 1177.

Here, Roybal asserts that BANA "acted dishonestly while handling the foreclosure of his underlying mortgage" and that BANA's "actions in 2010 and 2011 form the basis for a breach of good faith between the parties with respect to the underlying mortgage agreement and Roybal's legitimate expectations." (Doc. 8 at 16.) While these allegations are not pled with the utmost specificity in the Complaint, the Court agrees with Roybal that, reading the Complaint with the required liberality, he has alleged facts sufficient to infer that his claim for breach of the implied covenant is based at least in part on the underlying mortgage agreement. Thus, the claim is not inextricably linked to the unenforceable oral promise. Applying the eight year statute of limitations, the claim is timely pled and BANA's motion to dismiss this claim is denied.

Because Roybal maintains a cause of action in tort, his claim for punitive damages also survives.

IT IS ORDERED that the motion to dismiss (Doc. 3) is GRANTED IN PART AND DENIED IN PART. Counts I, III, IV, V, VI, VII, and VIII are DISMISSED WITH PREJUDICE.

Dated this 6th day of April 2015.

_____
Dana L. Christensen, Chief District Judge
United States District Court